UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EDGAR SANCHEZ,<br><br>                    Movant,<br><br>         -against-<br><br>UNITED STATES OF AMERICA,<br><br>                    Respondent. | 18-CV-206 (PAC)<br><br>01-CR-74-2 (PAC)<br><br>**OPINION AND ORDER** |

PAUL A. CROTTY, United States District Judge:

Movant Edgar Sanchez ("Sanchez"), *pro se* moves under 28 U.S.C. § 2255, challenging the legality of his sentence entered in *United States v. Delvi*, No. 01-CR-74-2 (PAC)[1] (S.D.N.Y. June 15, 2004). Sanchez was convicted of (1) narcotics conspiracy in violation of 21 U.S.C. § 846, (2) murder while engaging in a continuing criminal enterprise in violation of 21 U.S.C. § 848, and (3) the use of a firearm while in the course of a drug trafficking crime resulting in the death of a person in violation of 18 U.S.C. § 924(c) and (j).

On June 15, 2004, Sanchez was sentenced to 360 months of imprisonment on the two drug counts and to a mandatory consecutive term of ten years on the firearms charge. On appeal, the United States Court of Appeals for the Second Circuit affirmed his conviction. *See United States v. Martinez*, Nos. 04-4414-cr (L), 06-0204-cr, 06-0342-cr, 06-1558 (2d Cir. Apr. 15, 2008).[2] Sanchez did not seek a writ of certiorari from the United States Supreme Court. The conviction became final on July 15, 2009.

---

[1]  The case was originally assigned to the Hon. Shira A. Scheindlin, who conducted Sanchez's criminal trial and sentenced him on his conviction. Upon Judge Scheindlin's retirement, the case was reassigned to this Court.

[2]  *See also* ECF No. 1 at 95. Citations to the motion and other documents refer to the pagination generated by the Court's electronic case filing system. Unless otherwise noted, citations are made to the civil docket, 18-CV-206 (PAC).

Background and Related Proceedings

Almost six years later, on April 17, 2015 while Movant was in custody at the U.S. Penitentiary in Adelanto, California, he filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241 with the United States District Court for the Eastern District of California. *See Sanchez v. Matevousian*, No. 15-cv-00599-LJO-SMS (HC), 2016 WL 8999465 (E.D. Cal. Jan. 4, 2016), *aff'd*, 677 Fed. App'x 451 (9th Cir. Feb. 22, 2017). In Sanchez's § 2241 petition in California, he asserted the following claims for relief: (1) actual innocence on narcotics conspiracy because he did not know that the conspiracy existed; (2) actual innocence on murder while engaging in a continuing criminal enterprise because the jury's verdict was inconsistent and the jury did not find the element of quantity to convict; (3) actual innocence on use of a firearm while in the course of a drug trafficking crime resulting in the death of a person as the count was mislabeled; and (4) ineffective assistance of counsel. (ECF No. 1 at 18–20.) Sanchez conceded in his petition that the one-year statute of limitations to file a § 2255 motion had lapsed. (*Id.* at 15.)

The Eastern District of California dismissed Sanchez's § 2241 petition for lack of jurisdiction. *See Sanchez*, 2016 WL 8999465 at *2. The court concluded that because Sanchez sought to set aside his conviction, or in the alternative, to be immediately released from incarceration based on his claims of actual innocence and ineffective assistance of counsel, that his claims must be raised by a § 2255 motion in the Court which imposed the sentence (*i.e.* the Southern District of New York). *See id.* at *1–2. The court also determined that Sanchez could not take advantage of the savings clause of § 2255, *see* 28 U.S.C. § 2255(e), by seeking relief under § 2241 because he failed to show "that he did not have an unobstructed procedural shot at presenting his claims" in a § 2255 motion, *Sanchez*, 2016 WL 8999465 at *2. On appeal, the

2

United States Court of Appeals for the Ninth Circuit affirmed the district court's decision and denied Sanchez's request to transfer the petition to this Court. *See Sanchez*, 677 Fed. Appx. at 451. The Supreme Court denied certiorari. (ECF No. 4, Ex. D.)

### The Current Proceedings

On January 9, 2018, more than eight years and six months after his conviction became final, Sanchez instituted essentially the same action as he had in California, seeking relief on the same grounds. (ECF No. 1 at 1.)

### The Court's Order to Show Cause

On January 23, 2018, this Court ordered Sanchez to file a declaration within sixty days showing cause why his petition should not be denied as time-barred. (ECF No. 3.) In particular, the Court directed Sanchez to (1) set forth any facts showing that he has been pursuing his rights diligently and that some extraordinary circumstance prevented him from timely submitting this motion, and (2) explain how he can prove his innocence on the existing record and why he could not have previously raised his innocence claim. (*Id.* at 4.)

### Sanchez Declaration

On February 5, 2018, Sanchez filed a Declaration in Response to Order to Show Cause, (ECF No. 4) ("Declaration"), stating that new evidence obtained in May 2014—an affidavit from Jose Silva ("Silva Affidavit")—shows actual innocence of the charge of a narcotics conspiracy in violation of 21 U.S.C. § 846. Despite his prior admission that the one-year time limit had lapsed for filing a § 2255 motion (ECF No. 1 at 15), Sanchez now contends that his petition was timely filed in the Eastern District of California on April 17, 2015, because the Silva Affidavit obtained in May 2014 constitutes new evidence previously unavailable to him. (ECF No. 4 at 4–5.) Sanchez asserts that any delay in time between when he received the

3

Silva Affidavit and filed his petition in the Eastern District of California is attributable to the extraordinary circumstance of a four-month detention in the Special Housing Unit without access to his legal paperwork, (*id.* at 5), and that any delay in filing with this Court is due to his waiting for the Ninth Circuit's decision, (*id.* at 7). Sanchez claims that he was diligent in pursuing his rights by attempting to locate witnesses who turned out to be unavailable due to their cooperation with law enforcement and/or deportation to the Dominican Republic. (*Id.* at 3–5.) He also claims ineffective assistance of counsel, for trial counsel's failure to seek witnesses that Sanchez encouraged him to locate. (*Id.* at 3.)

## Government Response

On April 13, 2018, this Court ordered Respondent, United States of America ("the Government"), to answer Sanchez's motion within sixty days. On June 12, 2018, the Government filed a letter brief asserting that Sanchez's claims are time-barred. (01-CR-74 (PAC), ECF No. 423.) The Government argues that: (1) the Silva Affidavit does not render the petition timely under § 2255(f)(4) because it did not provide Sanchez with access to new facts supporting his innocence, (*id.* at 3); (2) equitable tolling does not apply because Sanchez's theory of innocence was available to him at every stage of proceedings, Sanchez did not account for reasonable diligence in asserting this theory since his conviction became final, and Sanchez did not demonstrate an extraordinary circumstance barring him from asserting his claims, (*id.* at 4); and (3) Sanchez cannot prove actual innocence on the existing record and that he could not have raised his claim of innocence at an earlier time, (*id.* at 5).

4

## **DISCUSSION**

I. **Legal Standard**

28 U.S.C. § 2255(a) provides, in relevant part, that a prisoner, in custody:

> claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

A petition for relief under § 2255 faces a heavy burden: "a collateral attack on a final judgment in a federal criminal case is generally available under § 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Cuoco v. United States*, 208 F.3d 27, 30 (2d Cir. 2000) (internal quotation marks omitted).

A federal prisoner seeking relief under § 2255 must generally file a motion within one year from the latest of four benchmark dates: (1) when the judgment of conviction becomes final; (2) when a government-created impediment to making such a motion is removed; (3) when the right asserted is initially recognized by the Supreme Court, if it has been made retroactively available to cases on collateral review; or (4) when the facts supporting the claim(s) could have been discovered through the exercise of due diligence. *See* 28 U.S.C. § 2255(f).

Equitable tolling of the one-year statute of limitations is appropriate where extraordinary circumstances prevented a movant from timely submitting a petition and the movant was diligent in pursuing his rights throughout the tolling period. *See Green v. United States*, 260 F.3d 78, 82–83 (2d Cir. 2001); *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000). If the petition is otherwise barred, it may still be considered on the merits if the petitioner establishes "actual innocence."

5

*See Schlup v. Delo*, 513 U.S. 298, 316 (1995); *Zhang v. United States*, 506 F.3d 162, 166 (2d Cir. 2007).

## II.  Analysis

### A.  Timeliness

Sanchez claims that his petition was timely filed, because he obtained new evidence in May 2014 purporting to show his actual innocence of a drug trafficking conspiracy. (ECF No. 4 at 4–7.) Sanchez's judgment of conviction, however, became final on July 15, 2009, after the Second Circuit affirmed the judgment, *see United States v. Martinez*, Nos. 04-4414-cr (L), 06-0204-cr, 06-0342-cr, 06-1558 (2d Cir. Apr. 15, 2008), and the expiration of the ninety-day period for filing a petition for a writ of certiorari, *see Clay v. United States*, 537 U.S. 522, 525 (2003). The Court received the § 2255 motion from Sanchez on January 9, 2018—eight years and six months after his conviction became final. The motion is untimely.

Sanchez asserts that his motion is timely because his April 2015 § 2241 petition was filed within one year of discovering new evidence—the Silva Affidavit—which he could not have obtained prior to May 2014 despite his due diligence. In an attempt to establish due diligence, Sanchez claims that "he took it upon himself to try to find . . . possible witnesses" that trial counsel failed to attempt to locate, "in pursuit of a sworn affidavit from them stating that which would have made the outcome of trial different." (ECF No. 4 at 3–4.) Specifically, Sanchez describes (1) his desire to secure an affidavit from one particular witness in New York, (2) that all other possible witnesses were deported to the Dominican Republic, and (3) how his brother was ultimately able to locate Jose Silva on social media and secure the Silva Affidavit. (*Id.* at 4.)

6

If Sanchez is in fact actually innocent of drug conspiracy because he was ignorant of its existence, then Sanchez would have known of his innocence at the time of his trial. Accordingly, the factual predicate of Sanchez's actual innocence claim was known many years prior to when Sanchez obtained the Silva Affidavit. *See Rivas v. Fischer*, 687 F.3d 514, 534 (2d Cir. 2012) ("The determination of the date on which the factual predicate for a habeas claim is first discoverable is a 'fact-specific' inquiry which requires a district court to analyze the factual bases of each claim and to determine when the facts underlying the claim were known, or could with due diligence have been discovered.").

Even if Sanchez had been diligently pursuing witness testimony that could support his claim of actual innocence over the past eight and a half years, the Silva Affidavit only supports Sanchez's previously-known claim of factual innocence and does not provide any new information. *See id.* at 535 ("[I]f new information is discovered that merely supports or strengthens a claim that could have been properly stated without the discovery, that information is not a 'factual predicate' for purposes of triggering the statute of limitations under § 2244(d)(1)(D)."); *see also Garcia v. United States*, No. 1:13-CV-3040-GHW, 2014 WL 6632969, at *7 & n.2 (S.D.N.Y. Nov. 24, 2014) (considering *Rivas* in interpreting § 2255(f)(4), "as there are no material differences between" § 2244(d)(1)(D) and § 2255(f)(4)). The Silva Affidavit does not make Sanchez's motion timely, because the one-year clock started several years before May 2014.

### B. Equitable Tolling

Sanchez also claims that equitable tolling should apply. (ECF No. 4 at 6–7.) But Sanchez has not shown that extraordinary circumstances prevented him from filing this motion and that he has diligently pursued his rights throughout the period he seeks to be tolled. *See*

7

*Green*, 260 F.3d at 82 (holding that extraordinary circumstances may warrant tolling the statute of limitations for § 2255 motions).

Sanchez alleges that extraordinary circumstances prevented him from timely filing his motion before this Court because he "was deprived from access to his legal documents for approximately four months" during 2014 and 2015 while in the Special Housing Unit, and "had to wait for the exhaustion of his claim in the wrong jurisdiction for a period of (3) years." (ECF No. 4 at 7.) Sanchez, however, does not point to any extraordinary circumstances that prevented him from filing his motion during the prior five years. Sanchez is not entitled to equitable tolling of the statute of limitations where his conviction became final over eight years ago and he cannot account for five of them.[3]

### C. Actual Innocence

Finally, Sanchez asserts that his motion should fall within the savings clause exception of § 2255 because he is actually innocent of drug trafficking conspiracy. (ECF No. 4 at 2–3.) Sanchez's claims of actual innocence do not fit within the savings clause: he cannot show actual innocence on the existing record and has failed to establish that he could not have effectively raised his claim of actual innocence at an earlier time.

The "savings clause" of § 2255 reads:

> An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, *unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.*

---

[3] Sanchez's claim of ineffective assistance of counsel would not make the motion timely or justify equitable tolling. The factual predicate of the actual innocence claim was known to Sanchez at the time of trial and the years-long delay in filing this motion is attributable to Sanchez, not his trial counsel.

8

28 U.S.C. § 2255(e) (emphasis added). Where a petitioner cannot utilize § 2255, but preventing collateral review "raise[s] serious constitutional questions," the petition may be brought instead under § 2241. *See Triestman v. United States*, 124 F.3d 361, 363 (2d Cir. 1997). At present, the Second Circuit has recognized only one type of claim that raises serious constitutional questions about § 2255(f)'s limitations on *habeas* relief, that is, "cases involving prisoners who (1) can prove 'actual innocence on the existing record,' and (2) 'could not have effectively raised their claims of innocence at an earlier time.'" *Cephas v. Nash*, 328 F.3d 98, 104 (2d Cir. 2003) (quoting *Triestman*, 124 F.3d at 363).

Sanchez claims that he was actually innocent of drug trafficking conspiracy because he was unaware that the conspiracy existed. In his § 2241 petition, Sanchez highlights trial testimony that he argues shows certain witnesses had limited interactions with Sanchez or had not witnessed Sanchez selling drugs as part of the Hughes Boys organization. (ECF No. 1 at 33–52.) He also claims that his affiliation with "the Ricardo brothers"[4] stemmed from close personal friendship as teenagers in the Bronx who shared Dominican heritage, rather than from drug conspiracy. (*See id.* at 52–56.) Sanchez asserts: "This new evidence of the relationship of the Ricardo brothers and petitioner is introduced in support of proving actual innocence by showing that the parties had an agreement only as friends and their actions never led to show a history of selling drugs together," and, "even if Mr. Ricardo's motives for the death of Earl Edwards was over a drug dispute, it does not necessarily mean that the petitioner carried out the killing on the same motives and objectives, specifically, by not having knowledge of drug activity at Hughes Avenue." (*Id.* at 55.)

---

[4] Ricardo Delvi was a co-defendant at Sanchez's trial.

9

The Silva Affidavit is presented as new evidence on the same theme. In it, Jose Silva describes his personal history and friendship with Sanchez and states:

> On the day of that shooting, when he returned about an hour later, he told me that he had shot some guys at Hughes Avenue. I argued with him as to why. All he said was that "it just happened"! He mentioned that Delvi needed his help, so he helped him. . . . He never under any circumstance knew about [Delvi's] involvement with drugs at Hughes Avenue. I went to Delvi's apartment at 2011 Crotona Avenue throughout that entire year (2000). I have never seen or heard about any drug activity from Hughes Avenue either. . . .
>
> Our friendships were not about drug dealing. Even though some of us were involved in drug affiliations separately, we did not know with who others or where others did things.

(*Id.* at Ex. A.)

Sanchez admits to the murder, but claims it was not related to the drug conspiracy. Yet, Sanchez acknowledges that the Government presented evidence in support of his involvement with the Hughes Boys organization, including testimony that: (i) Sanchez had borrowed the car of a member of the conspiracy on two occasions, (*id.* at 44–45), (ii) Sanchez was a hired hitman for Ricardo Delvi, (*id.* at 39), and (iii) Sanchez stated that he was "going to be half owner of the building, the spot," (*id.* at 49–50). The evidence presented at trial led a jury to convict Sanchez. Sanchez's assertions that he was only friends, and not in business, with the Ricardo brothers, and one affidavit attesting that Sanchez "never under any circumstance knew about [Delvi's] involvement with drugs at Hughes Avenue" does not prove Sanchez's actual innocence on the existing record.

Sanchez also fails to establish the second factor under *Cephas*: that he 'could not have effectively raised [his] claims of innocence at an earlier time.'" *Cephas*, 328 F.3d at 104. As explained above, the very nature of Sanchez's claims would have been known to him at the time

10

of his trial and could have been raised at an earlier time.[5] *See Bridges v. United States*, No. 00 CR 210 (HB), 2010 WL 743030, at *4 (S.D.N.Y. Mar. 4, 2010) (alibi "was by its very nature known to the Petitioner at the time of his trial . . . and therefore could have been raised 'at an earlier time'"). Sanchez's inability to bring his untimely § 2255 motion does not raise serious constitutional questions warranting a path to relief under § 2241. *See Herrera v. Atkinson*, No. 10 CIV. 4522 (JGK), 2010 WL 2612640, at *3 (S.D.N.Y. June 29, 2010) ("The fact that a § 2255 motion is now unavailable to petitioner does not raise serious constitutional questions because petitioner makes no sufficient argument that he could not have raised his claims at an earlier time.").[6]

## CONCLUSION

For the reasons provided above, the Court denies Sanchez's habeas petition under § 2255. The Clerk of Court shall withdraw any pending motions and close this case. Because Sanchez has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. *See* 28 U.S.C. § 2253.

Dated: New York, New York  
September 10, 2018

SO ORDERED

*/s/ Paul A. Crotty*  
PAUL A. CROTTY  
United States District Judge

---

[5] In addition to the claim of actual innocence on the drug conspiracy charge, Sanchez presents two additional claims of actual innocence in his § 2241 petition: (1) that the jury produced an inconsistent verdict and failed to find the element of quantity to convict Sanchez on count two (murder while engaging in a continuing criminal enterprise), and (2) Sanchez was not named as defendant in count eighteen (the use of a firearm while in the course of a drug trafficking crime resulting in the death of a person) because the count was mislabeled. These additional claims of actual innocence would also have been known to Sanchez at the time of trial and could have been raised at an earlier time.

[6] The Court need not address Sanchez's standalone ineffective assistance of counsel claim, because the § 2255 motion is time-barred.

11