UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> v. <br><br> EDGAR SANCHEZ, <br><br>                Defendant. | No. 1:01-cr-0074 (PAC) <br><br> **Oral Argument Requested** |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
EDGAR SANCHEZ'S MOTION FOR COMPASSIONATE RELEASE
PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)**

Sean Hecker
Meredith Foster
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, 63rd Floor
New York, New York 10118
(212) 763-0889

*Counsel for Edgar Sanchez*

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .................................................................................................................................. 1

   I.  MR. SANCHEZ HAS DEMONSTRATED THAT THERE ARE EXTRAORDINARY AND COMPELLING REASONS FOR HIS RELEASE ............................................................ 1

      A.  Mr. Sanchez's Extraordinary Rehabilitation, in Conjunction With His Longstanding Record of Public Service, Demonstrates Extraordinary and Compelling Circumstances ...... 2

      B.  The Totality of Mr. Sanchez's Circumstances Further Demonstrate Extraordinary and Compelling Circumstances ................................................................................................ 3

   II.  THE SECTION 3553(a) FACTORS WEIGH IN MR. SANCHEZ'S FAVOR .................... 5

      A.  The Nature and Circumstances of Mr. Sanchez's Offense and His History and Characteristics Weigh in Favor of His Release ...................................................................... 6

          1.  The Government Overstates Mr. Sanchez's Criminal Past ..................................... 6

          2.  In Assessing 18 U.S.C. § 3553(a)(1), Courts Consider Postsentencing Rehabilitation ................................................................................................................ 7

      B.  The Remaining 18 U.S.C. § 3553(a) Factors Counsel in Favor of Mr. Sanchez's Release ............................................................................................................................... 8

CONCLUSION ............................................................................................................................ 10

**PRELIMINARY STATEMENT**

Twenty-two years ago, Edgar Sanchez made a devastating mistake. He has spent the last two decades in prison grappling with and learning from the immense pain that he caused. In that time, Mr. Sanchez has demonstrated an unwavering commitment to righting his wrongs; through his addiction and anger management courses, academic pursuits, strong faith life, and public service, Mr. Sanchez has become unrecognizable from the man that killed Earl Edwards in 2000. In light of this extraordinary rehabilitation, together with the various other factors that render his circumstances extraordinary and compelling, Mr. Sanchez filed a motion asking this Court for a second chance on January 27, 2022. *See* ECF Nos. 456 & 464.

While the Government opposes this motion, it does not dispute Mr. Sanchez's exemplary rehabilitation, his substantial contributions to his community, or the harsh conditions of his confinement. In fact, the Government agrees that Mr. Sanchez "has taken [steps] to improve himself and assist others while incarcerated." ECF No. 467 at 4. Instead, the Government mischaracterizes Mr. Sanchez's arguments and misstates facts and law to argue that compassionate release is not warranted under these circumstances. The Court should reject these conclusory arguments outright and grant Mr. Sanchez's request for compassionate release.

**ARGUMENT**

**I.   MR. SANCHEZ HAS DEMONSTRATED THAT THERE ARE EXTRAORDINARY AND COMPELLING REASONS FOR HIS RELEASE**

The Government contends that while Mr. Sanchez's "rehabilitation and conditions of confinement are factors that may properly be considered under Section 3553(a), [] neither satisfies the necessary, threshold, requirement of an extraordinary and compelling circumstance." ECF No. 467 at 5. But Mr. Sanchez has never contended that those factors, considered alone, are sufficient; rather, Mr. Sanchez's rehabilitation, in conjunction with his substantial contributions to his

community, the unusually harsh conditions of his confinement, and his familial obligations combine to demonstrate extraordinary and compelling circumstances meriting his release.

> **A.    Mr. Sanchez's Extraordinary Rehabilitation, in Conjunction With His Longstanding Record of Public Service, Demonstrates Extraordinary and Compelling Circumstances**

The Government "credits" Mr. Sanchez's unyielding efforts "to improve himself and assist others while incarcerated" throughout the last twenty years, but argues such actions are "core rehabilitation" and therefore do not *alone* comprise extraordinary and compelling reasons for his release. ECF No. 467 at 4. However, the Government completely fails to engage with—let alone address—the established body of case law in this District which holds that rehabilitation *in conjunction with* a decades-long commitment to community service goes beyond "rehabilitation *alone*" and can "comprise[] an extraordinary and compelling reason for early release." *United States v. Underwood*, No. 88 Cr. 822, 2021 WL 3204834, at *3 (S.D.N.Y. Jan. 15, 2021) (emphasis in original) (cleaned up); *see also United States v. Torres*, 464 F. Supp. 3d 651, 664 (S.D.N.Y. 2020) (finding that the defendants' "decades-long record of meaningful community service" while behind bars went beyond mere rehabilitation and was "as the statute requires, 'extraordinary and compelling'"); *United States v. Rodriguez*, 492 F. Supp. 3d 306, 313 (S.D.N.Y. 2020) ("[T]his overwhelming evidence of, not just rehabilitation, but transformation, weighs in favor of a finding that extraordinary and compelling reasons exist to modify Rodriguez's sentence.").

"[B]y any measure," Mr. Sanchez's "good deeds exceed the bounds of what [courts] consider rehabilitation." *Underwood*, 2021 WL 3204834, at *3 (cleaned up and citation omitted). As detailed extensively in his motion, Mr. Sanchez has not only demonstrated a steadfast commitment to his own education and self-improvement, but he has also devoted himself to the education and betterment of his fellow inmates. Among many other things, Mr. Sanchez has served as a tutor to his peers (including on a pro bono basis) for approximately two decades, used his

education to help draft hundreds of legal motions and filings for his fellow inmates, and served as a role model and mentor through his words and character to other inmates. *See* ECF No. 464 at 6–7; *see also* ECF No. 456. In sum, Mr. Sanchez "has not merely become a fully functioning member of society, but he has established a decades-long record of meaningful community service, a record that would be notable even outside the federal prison system." *Rodriguez*, 492 F. Supp. 3d at 313 (cleaned up and citation omitted).

### B. The Totality of Mr. Sanchez's Circumstances Further Demonstrate Extraordinary and Compelling Circumstances

The Government appears to contend that Mr. Sanchez is not entitled to a sentence reduction because his bases for release, standing alone, do not "satisf[y] the necessary, threshold, requirement of an extraordinary and compelling circumstance." ECF No. 467 at 5. But in considering an application for compassionate release, "[t]he Court need not find a single dispositive circumstance to determine that 'extraordinary and compelling reasons' exist; rather, it may consider whether 'the totality of the circumstances' justify such a finding." *United States v. Piggott*, No. 94 Cr. 417, 2022 WL 118632, at *2 (S.D.N.Y. Jan. 12, 2022) (citation omitted). Here, Mr. Sanchez has set forth other factors—including the unusually harsh circumstances of his confinement and his role as the sole caregiver for his elderly parents—that combine with his extraordinary rehabilitation and decades of public service to establish extraordinary and compelling reasons for his release. *See Torres*, 464 F. Supp. 3d at 661 ("[R]ehabilitation in combination with the other factors can constitute, in their entirety, extraordinary and compelling reasons." (cleaned up)); *Underwood*, 2021 WL 3204834, at *3 ("[R]ehabilitation 'may [] interact with the present coronavirus pandemic' to create extraordinary and compelling circumstances.").

*First*, the Government argues that "the hardship of confinement during the pandemic" does not support Mr. Sanchez's release because he is not of "particular vulnerability to the COVID-19

3

virus." ECF No. 467 at 4–5. Here again, the Government's position ignores the substantial case law from this District that holds the exact opposite. Indeed, courts have repeatedly held that "the harsh and difficult conditions of detention during the pandemic" "weigh[] in favor of finding extraordinary and compelling reasons" whether or not the inmate is particularly medically vulnerable. *United States v. Rodriguez*, No. 05 Cr. 960, 2022 WL 158685, at *4 (S.D.N.Y. Jan. 18, 2022); *see also United States v. Romero*, No. 15 Cr. 445-18, 2021 WL 1518622, at *3–4 (S.D.N.Y. Apr. 16, 2021) (granting compassionate relief on this basis even though it was "factually disputed whether [Romero was] more vulnerable to COVID-19 than other inmates"); *United States v. Reiter*, No. 87 Cr. 132, 2021 WL 1424332, at *8 (S.D.N.Y. Apr. 15, 2021) (while "the vaccine diminishes COVID-19 itself being an extraordinary and compelling reason for a reduction" in the defendant's sentence, the defendant's conditions of confinement during COVID "militates in favor of finding 'extraordinary and compelling reasons.'"). As the court noted in *Romero*, "[b]oth in imposing sentences during the pandemic and in considering applications for compassionate release," "a day spent in prison custody in exceptionally arduous conditions is properly viewed as equivalent to more than a day in ordinary custody." 2021 WL 1518622, at *4.

That the over twenty-one years that Mr. Sanchez has spent behind bars has been "exceptionally arduous" is beyond dispute. *Id.* In 2018, Mr. Sanchez was brutally assaulted while in prison through no fault of his own, which led him to be hospitalized with severe injuries. ECF No. 464 at 9. A few days later, Mr. Sanchez—in the aftermath of his trauma—attempted to take his own life. *Id.* Mr. Sanchez would once again live in a state of heightened fear after the COVID-19 pandemic hit in March 2020 and prisons became petri dishes of disease.[1] But, fear was only the

---

[1] *See* Timothy Williams, et al., *'Jails Are Petri Dishes': Inmates Freed as the Virus Spreads Behind Bars*, N.Y. Times (Mar. 20, 2020), https://www.nytimes.com/2020/03/30/us/coronavirus-prisons-jails.html.

tip of the iceberg. Due to this historic pandemic, Mr. Sanchez has spent a large portion of the last two years with "extreme restrictions on [his] movements and visits," including restrictions on his religious practice, his ability to obtain gainful employment behind bars, as well as his ability to see and interact with loved ones (including his own father before he passed away). *United States v. Mcrae*, No. 17 Cr. 643, 2021 WL 142277, at *4 (S.D.N.Y. Jan. 15, 2021); ECF No. 464 at 13. "The pandemic has [therefore] subjected [Mr. Sanchez] to far more restrictive conditions of confinement . . . far beyond what the Court expected at sentencing," *Romero*, 2021 WL 1518622, at *4, which weighs in favor of his release.

*Second*, Mr. Sanchez's plan to serve as the only available caretaker for his elderly parents further weighs in favor of his compassionate release. *See United States v. Vargas*, 502 F. Supp. 3d 820, 828–29 (S.D.N.Y. 2020) (crediting a defendant's "wish to assist in the care of his sick mother in its assessment of extraordinary and compelling reasons" and granting compassionate release). As detailed in his initial motion, if released, Mr. Sanchez wishes to serve as a caretaker to his elderly mother and stepfather who cumulatively suffer from prostate cancer, heart disease, and hypertension, among other illnesses.[2] ECF No. 457, Ex L. Neither currently has a caregiver, as Mr. Sanchez's siblings are unable to shoulder this burden due to their own substantial job and family commitments. ECF 464 at 14.  Mr. Sanchez is therefore his parents' last hope of ensuring that they are well-taken care of and that their final years are spent with a loving and dedicated caregiver.

## II.     THE SECTION 3553(a) FACTORS WEIGH IN MR. SANCHEZ'S FAVOR

The Government also contends that "the relevant factors under § 3553(a) weigh heavily against a reduction in [Mr. Sanchez's] sentence." ECF No. 467 at 5. However, in support of this

---

[2] While Mr. Sanchez's immigration status is still uncertain, he could care for his mother and stepfather, if released, in either the United States or the Dominican Republic (where his parents have a second home).

5

argument, the Government appears to almost exclusively—and improperly—address one factor: "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). A proper consideration of the § 3553(a) factors militates in favor of Mr. Sanchez's release.

      **A.**    **The Nature and Circumstances of Mr. Sanchez's Offense and His History and Characteristics Weigh in Favor of His Release**

          1.    <u>The Government Overstates Mr. Sanchez's Criminal Past</u>

The Government argues that Mr. Sanchez's "criminal history and status" and "the nature and circumstances of [Mr. Sanchez's] crime strongly disfavor a sentence modification" by emphasizing the tragic details of Mr. Sanchez's past mistakes. ECF No. 467 at 5. In so doing, the Government introduced several factual inaccuracies into the record that overstate the severity of Mr. Sanchez's criminal history.

To start, the Government's assertion that Mr. Sanchez had previously been convicted of four "violent, serious" felonies is erroneous. *Id.* at 6. Prior to the conviction for which he is currently incarcerated, Mr. Sanchez had been convicted of three felonies, PSR ¶¶ 108, 111, 117, one of which he committed as a youthful offender, *id.* ¶ 108, and two of which were for drug possession, *id.* ¶¶ 111, 117. Moreover, the Government's characterization of Mr. Sanchez as an "escaped prisoner" is misleading. ECF No. 467 at 6. While Mr. Sanchez was declared absconded while on furlough from a residential drug rehabilitation program, there has been no adjudication declaring Mr. Sanchez to be an escapee. *See* ECF No. 436-1 at 4.

Of course, Mr. Sanchez does not make light of his past conduct; he understands the severity of his prior wrongs and feels immense remorse for the hurt they caused. *See* ECF No. 466-1. But to the extent Mr. Sanchez's previous criminal conduct is relevant to the Court's determination of the instant motion, the record on this score should be corrected.

### 2. In Assessing 18 U.S.C. § 3553(a)(1), Courts Consider Postsentencing Rehabilitation

The Government's argument as to the nature and circumstances of Mr. Sanchez's crime and his history and characteristics, 18 U.S.C. § 3553(a)(1), is not only inaccurate—it is also incomplete. While courts consider the "serious and violent" nature of a defendant's crime under this factor, *Underwood*, 2021 WL 3204834, at *6, the Supreme Court has established that "[t]here is no question that [a defendant's] conduct since his initial sentencing constitutes a critical part of the 'history and characteristics' of a defendant that Congress intended sentencing courts to consider." *Pepper v. United States*, 562 U.S. 476, 491–92 (2011) (citation omitted) ("[E]vidence of postsentencing rehabilitation may be highly relevant to several of the § 3553(a) factors" and "may plainly be relevant to 'the history and characteristics of the defendant.'" (citation omitted)). Adhering to *Pepper*'s mandate, courts in this District regularly find that defendants' history and characteristics weigh in favor of release based on their demonstrated postsentencing rehabilitation. *See, e.g.*, *United States v. Brunetti*, No. 01 Cr. 257, 2022 WL 92753, at *6 (S.D.N.Y. Jan. 10, 2022) (defendant's history and characteristics "undoubtedly weigh in [his] favor" because, "despite having no realistic hope of release," he undertook "considerable efforts to rehabilitate himself over the past two decades."); *United States v. Quinones*, No. 00 Cr. 761-1, 2021 WL 797835, at *4 (S.D.N.Y. Feb. 27, 2021) (in considering defendant's history and characteristics, holding that "his remarkable postsentencing record weighs strongly in favor of some sentence reduction"); *United States v. Fisher*, 493 F. Supp. 3d 231, 238 (S.D.N.Y. 2020) (noting that, in assessing defendant's history and characteristics, his "crimes and the regret he shows must be viewed from the present day, after 38 years of rehabilitation he undertook wholly for its own sake and without hope of relief").

7

As the Government acknowledges, Mr. Sanchez "has taken . . . significant steps to improve himself and his life while incarcerated." ECF No. 467 at 5. Indeed, over the last twenty years, Mr. Sanchez has become a religious leader in his community, supported his family, maintained an exemplary disciplinary record, and taken every opportunity to educate and better himself and his peers. Clearly, Mr. Sanchez "has undertaken extraordinary efforts at rehabilitation since his incarceration," which "weigh[] strongly in favor of a sentence reduction." *Rodriguez*, 492 F. Supp. 3d at 314.

### B. The Remaining 18 U.S.C. § 3553(a) Factors Counsel in Favor of Mr. Sanchez's Release

Beyond its threadbare assertion that "[t]he defendant's sentence is appropriate for the murder committed," ECF No. 467 at 6, the Government does not appear to engage with the remaining § 3553(a) factors, which include "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; [and] to protect the public from further crimes of the defendant," 18 U.S.C. § 3553(a)(2), among others. These factors, too, weigh in favor of Mr. Sanchez's release.

In asserting that Mr. Sanchez's sentence is "appropriate for the murder he committed," the Government ignores that, even without taking into account his three years of Good Conduct Time, Mr. Sanchez has already served the national average sentence length for federal murder convictions. ECF No. 464 at 24. Nor does the Government contend with the unusually harsh conditions under which Mr. Sanchez has served the last two years of his sentence, which further demonstrate that his two decades of incarceration adequately punish and reflect the gravity of his offense. *Id.* at 20. And in any event, "[it] is unknown how long following his release from prison

8

[Mr. Sanchez] will be kept in an immigration detention center" while he litigates his immigration status, "which will also add time to his incarceration." *Rodriguez*, 2022 WL 158685, at *5.

Further, the Government does not—because it cannot—contend that a lengthier sentence is needed to adequately deter Mr. Sanchez or to protect the public from further crimes. Mr. Sanchez's "remorse and rehabilitation are relevant to this factor and counsel in favor of a sentence reduction." *Id.* (citation omitted). As evidenced by the countless letters of support for his motion for compassionate release and his nearly spotless disciplinary record, Mr. Sanchez is clearly not the same person who made a grave mistake twenty years ago. He has taken every opportunity throughout his incarceration to reflect on his past wrongs and actively work on the behaviors and tendencies that led to them. Today, he is a pillar in his family, a mentor and tutor to his peers, a leader in his religious community, and a zealous student. ECF No. 464 at 5–13. This extraordinary growth obviates any concerns that Mr. Sanchez would pose a danger to the public if released.

Notably, the Government did not affirmatively raise any case law in support of its contention that the § 3553(a) factors weigh against Mr. Sanchez's release. And while the Government attempts to distinguish a handful of compassionate release cases, ECF No. 467 at 5 n.4, the case law demonstrates that courts have reduced defendants' sentences in cases involving similarly serious convictions under circumstances like those presented here. *See Rodriguez*, 2022 WL 158685, at *1, *6 (concluding "that a sentence of twenty-five years' imprisonment, to be followed by five years of supervised release, is sufficient, but not greater than necessary, to comply with the purposes of sentencing set forth in Section 3553(a)" where defendant was convicted of murder in the course of a drug conspiracy); *United States v. Ramsay*, 538 F. Supp. 3d 407, 410 (S.D.N.Y. 2021) (reducing a sentence of life imprisonment to 30 years after reasoning that while "[m]urdering a rival gang member is a serious crime in its own right," "the offense here was

9

"notably more heinous"); *United States v. Glynn*, No. 06 Cr. 580, 2022 WL 562652, at *8 (S.D.N.Y. Feb. 24, 2022) (reducing a life sentence to 420 months where defendant was convicted of murder based on harsh conditions of COVID, defendant's young age (22) at the time of his criminal conduct, and his rehabilitation); *United States v. Perez*, No. 3:02 Cr. 7, 2021 WL 837425, at *6 (D. Conn. Mar. 4, 2021) (reducing a life sentence to 23 years where defendant was convicted for drug dealing activities and hiring a hitman to murder a competitor).

Perhaps recognizing that the law and facts favor Mr. Sanchez's release, the Government mischaracterizes Mr. Sanchez's "lengthy criminal history and his escapee status" to support the "appropriate" nature of Mr. Sanchez's draconian forty-year sentence. ECF No. 467 at 6. But, as previously discussed, "Justice Sotomayor's opinion in *Pepper* states that a district court [applying the § 3553(a) factors] *must* consider a defendant's post-sentencing good conduct." *United States v. Rodriguez*, No. 94 Cr. 313, 2020 WL 2521551, at *2 (S.D.N.Y. May 18, 2020). Therefore, Mr. Sanchez's pre-sentencing conduct alone cannot demonstrate that "the [§ 3553(a)] factors outweigh the extraordinary and compelling reasons warranting compassionate release." *United States v. Seshan*, No. 14 Cr. 620, 2021 WL 5861228, at *3 (S.D.N.Y. Dec. 10, 2021) (cleaned up and citation omitted). Rather, Mr. Sanchez's extraordinary rehabilitation, together with the length and harsh conditions of the sentence he has already served, establish that the § 3553(a) factors favor his release.

## CONCLUSION

For the reasons above, the motion for compassionate release should be granted and Mr. Sanchez should be resentenced to a term of time served or a reduced term of imprisonment.

<table>
<tr><td>Dated: New York, New York<br>April 25, 2022</td><td>Respectfully Submitted,<br><br>/s/ *Sean Hecker*<br>Sean Hecker<br>Meredith Foster<br>KAPLAN, HECKER & FINK LLP<br>350 Fifth Avenue, 63rd Floor<br>New York, New York 10118<br>(212) 763-0889<br>shecker@kaplanhecker.com<br><br>*Attorneys for Edgar Sanchez*</td></tr>
</table>

**CERTIFICATE OF SERVICE**

      This is to certify that on April 25, 2022, a copy of Edgar Sanchez's reply memorandum of law in further support of his Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to all attorneys of record. Two courtesy copies have also been submitted to Judge Crotty's Chambers.

                                                                     /s/ *Sean Hecker*
                                                                   Sean Hecker