UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
UNITED STATES OF AMERICA,                    :
                                             :
            - *against* -                    :          01 Cr. 74-2 (PAC)
                                             :
EDGAR SANCHEZ,                               :          **OPINION & ORDER**
                                             :
                        *Defendant.*         :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Defendant Edgar Sanchez, a 47-year-old inmate at Federal Correction Institution Fairton, moves for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), citing his extensive public service, his rehabilitation, and COVID-related prison conditions. The Court finds that Sanchez failed to bear his burden of proof or to demonstrate extraordinary and compelling reasons for release; Sanchez's motion for compassionate release is thus **DENIED** without prejudice to its renewal should his health, family circumstances, or conditions of incarceration materially worsen.

## BACKGROUND

The Court assumes familiarity with the facts and history of this action, as detailed in its previous orders. *See Sanchez v. United States*, No. 01 CR. 74-2 (PAC), 2021 WL 5234978 (S.D.N.Y. Nov. 10, 2021). Accordingly, only a brief summary is required.

Sanchez's conviction arises out of the murder of Earl Edwards. *See* Pre-Sentence Report ("PSR") at 1. The events leading up to the murder were particularly disturbing. During a meeting on December 15, 2000, leadership from the Hughes Boys gang[1] offered $5,000 to any person who would kill a member from a rival gang faction. *Id.* ¶ 93. Sanchez accepted this offer, and repeatedly drove throughout the Bronx (along with Hughes Boys leadership) patrolling for a rival gang member to kill. *Id.* ¶ 37. On December 19, 2000, during one of these patrols, the group

---

[1] The Hughes Boys gang distributed high volumes of crack, cocaine, and heroin throughout New York City. *See* PSR ¶ 35.

spotted 18-year-old rival gang member, Earl Edwards. *Id.* Sanchez stepped out of the van and fired multiple shots in the direction of Edwards, hitting him twice. *Id.* ¶ 93. Edwards was left bleeding on the street and died from his injuries.

After an eight-week trial, a jury convicted Sanchez of three offenses: conspiracy to distribute narcotics in violation of 21 U.S.C. § 846;[2] intentional murder while engaged in a major narcotics conspiracy in violation of 21 U.S.C. § 848(e)(1)(A); and murder in the course of using and carrying a firearm in violation of 18 U.S.C. §§ 924(c) and (j). *See* Judgment, ECF No. 226.

On June 15, 2004, Judge Scheindlin[3] sentenced Sanchez to 360 months' imprisonment and a mandatory consecutive ten-year term of imprisonment. *See id.* The Second Circuit affirmed the sentence on direct appeal. *See United States v. Martinez*, 311 F. App'x 378, 381 (2d Cir. 2008) (summary order).

Sanchez has since pursued several unsuccessful collateral challenges. *See* First Rule 36 Order, ECF No. 455, at 2. Representing himself *pro se*, Sanchez filed an initial motion for Compassionate Release on January 27, 2022. *See* ECF No. 456. The Court then appointed counsel, who filed a memorandum in support of Sanchez's initial motion on February 22, 2022. The Government filed its opposition to the Motion on April 18, 2022. As of Sanchez's initial motion, he has served approximately 21 years of his sentence—roughly 61%—with an expected release date of June 2035.

---

[2] The relevant substantive offenses underlying this conspiracy offense are found at 21 U.S.C. § 841(b)(1). *See* PSR ¶¶ 98, 159.

[3] Judge Scheindlin presided over the original sentencing before the case was reassigned to this Court in 2016.

## DISCUSSION

Once imposed, a district court must leave a term of imprisonment undisturbed, subject to limited exceptions. *See United States v. Maldonado*, No. 16-CR-285 (CM), 2021 WL 639069, at *1 (S.D.N.Y. Feb. 17, 2021). The relevant exception here is commonly known as the "Compassionate Release" provision. Under this provision, a defendant can petition the district court for a sentence reduction after "fully exhaust[ing] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

Once the defendant has exhausted his administrative remedies, the Court may grant a sentence reduction if it determines (1) the defendant has established "extraordinary and compelling reasons warrant such a reduction," and (2) a sentence reduction would be consistent with the § 3553(a) sentencing factors. *Id.*; *see also United States v. Keitt*, 21 F.4th 67, 71 (2d Cir. 2021). "A district court has broad discretion when considering a motion for compassionate release," *United States v. Halvon*, 26 F.4th 566, 569 (2d Cir. 2022), and may "consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring," *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020). The only statutory constraint is that the Court shall not consider rehabilitation alone as an extraordinary and compelling reason to reduce the sentence. 28 U.S.C. § 994(t); *see Brooker*, 976 F.3d at 237–38.

### I.    Exhaustion

Sanchez has satisfied § 3582(c)(1)(A)'s exhaustion requirement.[4] His request for compassionate release was denied by the Bureau of Prisons ("BOP") on July 22, 2021. *See* Ex. A,

---

[4] The Government does not dispute that Sanchez has exhausted his administrative remedies. *See* Gov't Opp., ECF No. 467, at 5 n.3.

ECF No. 456-1. Over 30 days have passed since BOP's decision. Thus, the Court may consider his motion.

## II.   Extraordinary and Compelling Circumstances

Sanchez argues that he is entitled to an early release because of: (1) the conditions of his confinement resulting from COVID related prison conditions; (2) obligations to his ailing family members; and (3) evidence of rehabilitation and community service. For the following reasons, these factors are insufficient, individually and collectively, to constitute extraordinary and compelling circumstances warranting release.

### 1.   COVID-19

To start, the Court is unpersuaded that the difficult—but generalized—prison conditions during the COVID-19 pandemic call for Sanchez's compassionate release. The pandemic assuredly remains a societal risk, but widespread availability of vaccines has significantly reduced that risk. As such, federal courts have routinely found that the abstract presence of COVID-19 in prison, without more, does not establish extraordinary and compelling circumstances. *See, e.g.*, *United States v. Farmer*, No. 19-CR-427 (LTS), 2022 WL 47517, at *3 (S.D.N.Y. Jan. 5, 2022); *see also United States v. Lorenzano*, No. 03 Cr. 1256 (JFK), 2021 WL 734984, at *5 (S.D.N.Y. Feb. 24, 2021) ("The current COVID-19 pandemic is an unprecedented worldwide catastrophe. But it does not warrant the early release of sentenced inmates in federal prisons convicted of serious, dangerous offenses . . . whose medical conditions and risk of contracting the virus cannot be deemed 'extraordinary and compelling.'" (citation omitted)).

Sanchez provides no specific reason that he in particular is susceptible to severe COVID-19.[5] He relies on cases where courts have considered the difficult prison conditions of the

---

[5] Additionally, Sanchez's age—47—does not put him in a category that makes him particularly vulnerable to COVID. *See* Centers for Disease Control and Prevention, People with Certain

pandemic as relevant in granting compassionate release. *See United States v. Rodriguez*, No. 05-CR-960, 2022 WL 158685, at *4 (S.D.N.Y. Jan. 18, 2022); *United States v. Reiter*, No. 87-CR-132, 2021 WL 1424332, at *8 (S.D.N.Y. Apr. 15, 2021); *United States v. Rodriguez*, 492 F. Supp. 3d 306, 310–11 (S.D.N.Y. 2020). These cases are collectively distinguishable because, despite discussing the effects of COVID-19 on prison conditions generally, each case focused on the defendant's specific susceptibility to COVID-19, particularly with respect to diabetes mellitus and obesity. *See United States v. Nwankwo*, No. 12 CR 31 (VM), 2020 WL 2490044, at *1 (S.D.N.Y. May 14, 2020) ("[T]he risks posed by the pandemic alone do not constitute extraordinary and compelling reasons for release, absent additional factors such as advanced age or serious underlying health conditions."). Even for those with similar co-morbidities associated with COVID-19, other courts in this district have been reluctant to find extraordinary and compelling circumstances if the defendant's medical conditions are under control. *See, e.g.*, *United States v. Steele*, No. 15 CR 836 (VM), 2022 WL 2437904, at *2 (S.D.N.Y. July 5, 2022) (holding the risk of contracting COVID-19 in prison, exacerbated by defendant's medical conditions—asthma, hypertension, and obesity—did not surpass "the high bar to constitute 'extraordinary and compelling' reasons justifying release" or a sentence reduction). Consistent with this precedent, Sanchez's incarceration during the pandemic does not warrant compassionate release.

### 2. Ailing Parents and Brother

Sanchez next asserts that he is entitled to compassionate release because he must care for his ailing parents and brother, but this argument also fails. When sufficient evidence is presented that a family member is completely unable to care for themselves, the illness of that family member

---

Medical Conditions (May 2, 2022) (identifying people 65 years and older as facing a higher-risk for severe illness from COVID-19), available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

can rise to the level of an extraordinary and compelling reason for release if the defendant would be the *only* available caregiver. *See United States v. Lisi*, 440 F. Supp. 3d 246, 252 (S.D.N.Y. 2020). "[W]hether the medical condition of a defendant's family member justifies the defendant's release generally depends on whether other caretakers are available." *United States v. Guillen*, No. 18-CR-640, 2021 WL 77029, at *2 (S.D.N.Y. Jan. 7, 2021).

Sanchez argues that his mother and step-father are ill, but that is insufficient; he has not provided any evidence indicating they are currently unable to care for themselves.[6] *See* Mot. for Misc. Relief, Ex. L, ECF No. 457. Furthermore, Sanchez has family members that can care for his parents. Sanchez's mother and step-father currently live in Hollywood, Florida. Sanchez's brother, Bienvenido Piggott Junior, lives just 50 minutes away. *See* Mot. for Misc. Relief at 9, ECF No. 456. And Sanchez's 23-year-old son and daughter-in-law reside in Miami, Florida. *Id.* at 10; *see Guillen*, 2021 WL 77029, at *2 (the presence of local relatives can defeat the argument that defendant is the sole caretaker). Sanchez's arguments regarding his brother fail for much of the same reasons. He too is seriously ill and suffers from a condition that renders him dependent on a ventilator and full-time care. *See* Mot. for Misc. Relief at 9, ECF No. 456. However, Sanchez's brother is currently receiving that care from Concourse Rehabilitation Center in the Bronx, and two of Sanchez's other brothers currently reside in New York City.

Sanchez argues that these other family members cannot provide the necessary care "due to their own substantial job and family commitments." *See* Reply Mem. of Law in Supp of Mot. at 5, ECF No. 468. While the external commitments of Sanchez's family members might make caretaking difficult, that is "merely the inevitable circumstances families face when a family

---

[6] The medical records provided by Sanchez indicate that his father suffers from prostate cancer and his mother from heart disease and hypertension. *See* Mot. for Misc. Relief, Ex. L, ECF No. 457.

member is incarcerated," not an extraordinary and compelling reason to reduce a sentence. *John*, 2020 WL 6581217, at *2.

### 3. Rehabilitation and Community Service

Given the Court's rejection of Sanchez's arguments regarding COVID conditions and his family circumstances, he must rely solely on evidence of rehabilitation and community service. The Court acknowledges Sanchez's genuine and continued effort to better both himself and his community. Specifically, the 14 letters sent on Sanchez's behalf, four from family and 11 from fellow prisoners, capture Sanchez's maturity, mentorship, and desire to better himself. *See* Ex. O, ECF No. 456. But it is well established that the Court cannot rely on rehabilitation alone—even when significant—in determining whether there are extraordinary and compelling reasons for a sentence adjustment. *See Brooker*, 976 F.3d at 237–38; 28 U.S.C. § 994(t); *cf. Rodriguez*, 492 F. Supp. 3d at 311–12 (acknowledging remarkable rehabilitation as evidenced by letters received from 27 BOP officials, in tandem with the defendant's significantly heighted COVID concerns due to his health comorbidities).

Sanchez relies on several cases of significant rehabilitation along with exemplary community service and sincere COVID concerns that collectively give rise to an extraordinary and compelling reason for sentence reduction. *See United States v. Torres*, 464 F. Supp. 3d 651 (S.D.N.Y. 2020); *United States v. Underwood*, 2021 WL 3204834, at *2 (S.D.N.Y. Jan. 15, 2021). These cases are distinguishable because they present compelling mitigating factors along with the component of rehabilitation. For example, the courts in both *Torres* and *Underwood* accounted for the defendants' serious health and age concerns that exacerbated the risks associated with COVID. *See Torres*, 464 F. Supp. 3d at 664-65 (age and comorbidities included high blood pressure, a stroke, diabetes, arthritis, and gallbladder stones.); *Underwood*, 2021 WL 3204834, at

*6 (defendant was actively infected with COVID, so the dangers posed by COVID were at their high point). Additionally, in both cases, defendants produced letters of unbiased support, outside of friends or family, to demonstrate extraordinary rehabilitation. *See Torres*, 464 F. Supp. 3d at 653, 660-62 (relying in part on letters from the original sentencing judge and the chief psychologist at the prison attesting to the defendants' rehabilitation); *see also Underwood*, 2021 WL 3204834, at *2 (noting that both a Third Circuit Judge and United States Senator Cory Booker expressed support for the defendant). Lastly, the defendants in *Torres* and *Underwood* collectively received no significant disciplinary infractions throughout their sentences.[7] By contrast, in 2007, Sanchez received a disciplinary citation for hiding a homemade weapon in his cell's sink drain. *See* ECF No. 456 at 17. This serious infraction—while certainly dated—undercuts Sanchez's narrative of "decades" of uninterrupted rehabilitation.

In sum, Sanchez does not sufficiently raise any relevant factors outside of his rehabilitation that favor release. Thus, the Court finds that Sanchez fails to meet the burden necessary for a sentence reduction.

### III.   § 3553(a) Factors

Even if the Court did conclude that Sanchez had extraordinary and compelling reasons for a sentence reduction, the § 3553(a) factors continue to weigh in favor of the original sentence. *See Keitt*, 21 F.4th at 73 (extraordinary and compelling reasons are necessary, but not sufficient, to grant a sentence reduction).

In evaluating the § 3553(a) factors, the Court must examine the history and characteristics of the defendant, the nature and circumstances of the offense, and look to promote respect for the

---

[7] Each defendant in *Torres* received one citation for a messy cell during their three decades of incarceration. *See Torres*, 464 F. Supp. 3d at 662. The defendant in *Underwood* received none. *Underwood*, 2021 WL 3204834, at *3.

law while providing just punishment and deterring criminal conduct.  18 U.S.C § 3553(a).  When

evaluating Sanchez's history, the Court notes that prior to the current offense for which Sanchez

is incarcerated, he was convicted on four different offenses.[8]  Despite these prior convictions,

Sanchez continued his path of criminality which culminated in the execution of an 18-year-old

man.  *See* PSR ¶ 3.  At the time of the murder, Sanchez maintained escapee status having

absconded from a medium security correctional facility.  *See id.* ¶ 114.  During sentencing, Judge

Scheindlin noted that Sanchez was particularly culpable for his participation in the "violent and

wide-ranging drug dealing gang known as the Hughes boys," Sent. Tr. 15:13-17, and for

committing murder on behalf of that organization.   At this time, Sanchez has only completed

approximately 60% of his sentence, and a reduction would be a windfall that would disserve

§ 3553(a)'s goal of deterrence.  *See United States v. Goode*, No. 16CR0052901NSR, 2021 WL

3500012, at *3 (S.D.N.Y. Aug. 7, 2021) (denying motion for compassionate release where

defendant served 65% of his sentence); *United States v. Tisdale*, No. 15-CR-334 (RA), 2020 WL

5441584, at *3 (S.D.N.Y. Sept. 9, 2020) (denying motion for compassionate release where

defendant had served 70% of his sentence for narcotics trafficking conspiracy).

    In evaluating a defendant's history and characteristics, "evidence of post sentencing

rehabilitation may be highly relevant." *Pepper v. United States*, 562 U.S. 476, 491 (2011).

Accordingly, evidence of rehabilitation and behavioral progress throughout Sanchez's

incarceration are considered relevant to the 3553(a) consideration.   Despite his behavioral

improvement, the Court still finds that Sanchez's sentence continues to be sufficient, but no greater

---

[8] At sentencing, Sanchez had a criminal history score of 11, reflecting previous convictions for
Criminal Possession of a Weapon in the Third Degree, Criminal Possession of a Controlled
Substance in the Second Degree, Assault with intent to cause Physical Injury, and Attempted
Criminal Possession of a Controlled Substance in the Fourth Degree. *See* PSR ¶¶ 108, 111, 115,
117, 121.

than necessary, to meet the mandate under Section 3553(a), especially when addressing the seriousness of Sanchez's crime and adequate deterrence. To grant a sentence reduction would "undermine the goals of the original sentence." *United States v. Ebbers*, 432 F. Supp. 3d 421, 431 (S.D.N.Y. 2020). Sanchez's motion therefore fails on the § 3553(a) front as well.

## <u>CONCLUSION</u>

For the foregoing reasons, Sanchez's motion for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A) is **DENIED** without prejudice to its renewal should Sanchez's health, family circumstances, or conditions of incarceration materially worsen with the passage of time.

Dated: New York, New York
      September 19, 2022

SO ORDERED

HONORABLE PAUL A. CROTTY
United States District Judge

10